JASPER E. JONES, Judge.
In this action upon a contract of sale of a partnership interest the defendant, Jack L. Smith, appeals a judgment against him in the amount of $15,874.28 in favor of the plaintiff partnership, Peters, Smith & Co. The judgment also had the effect of rejecting the appellant’s reconventional demand against the plaintiff. The plaintiff’s suit was based upon an alleged overpayment to the defendant for his 50% interest in the partnership.
BACKGROUND FACTS
In the latter part of 1978 Smith, an experienced real estate developer, approached Ben Peters with a proposal to construct on certain property in Monroe owned by Ben and his brother John, a building to be leased by Handy City. On January 24, 1979 a formal partnership agreement was executed between the Peters brothers and Smith for the purpose of undertaking the Handy City project. In the partnership agreement Ben Peters was designated as the managing party. It was agreed by all of the parties that the construction firm of Peters, Merritt & Oliver Co., Inc., in which Ben Peters owned an interest, would be the general contractor for the construction of the Handy City building for the price of the cost of constructing the building plus 10%. Construction was commenced in early 1979.
In April of 1979, at a time when the project was only about 20% complete, *873 Smith approached Ben and John about buying their interest in the project and was advised by them that they were not interested in selling. Very soon thereafter Smith offered to sell his interest in the partnership to John and Ben and they agreed to buy it. The parties executed on April 30, 1979, a letter of agreement which contained a formula to be used to determine the sale price for Smith’s interest in the project.[1] Smith was advanced $50,-000.00 by the partnership at the time of the execution of the letter agreement.
On February 5, 1980 as the project neared completion Ben Peters sent to Jack Smith a formal act of sale wherein Smith conveyed his interest in the project to Ben and John Peters for a recited consideration of $50,000.00. In his letter of transmittal Ben Peters advised Smith that the purpose of the sale was to preserve the buyer’s first user status and that it must be executed before Handy’s occupancy of the building.[2] Smith acknowledged that he was aware of the purpose for which Ben Peters sought the execution of the sale but feared that the recited $50,000.00 consideration in the sale would supersede the terms of the letter agreement which provided the formula for the determination of the consideration for the sale and under which formula the price that he could receive for his sale could exceed the $50,000.00. For this reason when Smith executed the document before his attorney and notary, he instructed his attorney to retain possession of it because of a dispute which he had with Ben Peters about some money. He also instructed his attorney to advise Ben Peters that the document had been signed and this was done. Ben Peters called Smith’s attorney and attempted to obtain the document but Smith’s attorney refused to deliver it to him. The document was apparently signed on March 19, 1980 and Handy City moved into the building on March 20th. The act of sale executed by Smith was. lost by Smith’s attorney but a copy of it was filed in evidence as an exhibit at trial.
Subsequent to the completion of the building a certified public accountant audited the partnership records and determined the total cost of the project was $830,-222.81. When this total cost figure was used in the formula contained in the April 30, 1979 letter it was then determined that Smith was entitled to receive for his interest in the partnership the sum of $34,-880.60. He had received an advance payment on the sales price at the time of the execution of the April 30, 1979 letter of $50,000.00. According to the formula he had therefore been overpaid $15,101.40. *874 Subsequent to the audit an additional bill was received which when included within the cost of the total project reflected that the overpayment was in fact $15,874.28. Demand was made upon Smith for the overpayment without avail and this suit was initiated. The appellant answered denying the debt and reconvening for $190,-000.00 additional consideration for his sale of his partnership interest allegedly owed under the formula of the April 30, 1979 letter agreement.
The appellant makes the following assignments of error:
(1) he contends the trial court erred in determining the plaintiff partnership was the proper party to assert the cause of action for the refund. Appellant is here contending that he sold his interest in the partnership to Ben and John Peters individually rather than to the partnership composed solely of them;
(2) that the trial court committed error by including within the total cost of the project interest on the interim loan used to secure funds for the construction of the Handy City building. The amount of the interim interest was $49,705.77. Appellant contends the interim interest should be disallowed because managing partner Ben Peters secured the interim loan without the written consent of the other two partners, which written consent was required by the articles of partnership;
(3) appellant contends the trial judge erroneously included within the total cost of the project a $25,000.00 real estate commission paid to realtor Bloomingfield who had rendered no service in connection with the Handy City project.
Inherent in appellant’s assignments of error 2 and 3 is his contention in brief that when these two allegedly incorrect project costs are eliminated from the total cost of the project that he is then entitled to recover on his reconventional demand the sum of $22,241.48 calculated in accordance with the formula contained in the April 30th letter agreement.
Though not included in appellant’s formal assignments of error he asserts as an alternative argument in brief that the sales agreement received by him on February 5, 1980 and which he signed on March 19, 1980 and required his attorney to retain possession of, was in fact a new agreement between he and the brothers Ben and John Peters the terms of which superseded the April 30, 1979 letter agreement. He contends the sale signed by him March 19th establishes a specific consideration of $50,-000.00 for the sale without reference to any formula and for this reason plaintiff was not entitled to recover the overpayment determined by the formula in the letter agreement.
ISSUE OF PROPER PARTY PLAINTIFF
The trial judge in his written reasons for judgment gave the following reasons for rejecting the appellant’s contention that the partnership was not the proper party plaintiff:
“... the evidence is quite clear that the defendant was paid his $50,000 advance by the partnership, such payment being made through three checks drawn on the partnership account. There is no contention or evidence that that sum was a gift by the partnership to the defendant; and, if it were a loan, the partnership would be entitled to recover the entire amount. Instead, all parties acknowledge that the three partnership checks were paid as advances to the defendant in connection with the April 30 letter. Hence, this contention, made for the first time following trial, questioning the standing of plaintiff, or the proof thereof, is unimpressive.”
The record fully supports the trial judge’s conclusion.
We note that in the appellant’s answer to the partnership's petition he sets forth a reconventional demand against the partnership for $190,000.00 on the theory that under the formula contained in the letter agreement the defendant was entitled to this additional amount, as consideration for his sale of his interest in the property to the partnership. The defendant in effect *875 does here acknowledge that either his sale initially was direct to the partnership or that the partnership had acquired from brothers John and Ben by assignment the defendant’s interest in the partnership and had assumed the obligation of brothers John and Ben under the letter agreement, that being to pay the consideration as per the formula in the letter agreement.
We further note that in the pre-trial stipulation executed by the defendant’s attorney wherein the contested issues of fact are set forth there is no issue referring to the correctness of the partnership as the proper party plaintiff, but rather included in defendant’s contentions in the pre-trial statement is a contention that the partnership owes him some unpaid consideration for his interest in the partnership.
We have also carefully reviewed the testimony of Ben Peters and find the totality of it clearly expresses the intention that he and John Peters were acting for and on behalf of the partnership in acquiring the interest of Smith in the partnership. We conclude this assignment of error is without merit.
WAS THE INTEREST EXPENSE INCURRED ON THE LOAN FOR THE INTERIM FINANCING A CORRECT ITEM TO BE INCLUDED WITH THE TOTAL PROJECT COST
Ben Peters testified that he and Jack Smith discussed at length where to obtain the interim financing. Smith wanted to do the interim financing with Central Bank and Peters wanted to do the interim financing with Ouachita National Bank. Each agreed to obtain from their respective favorite bank an interest quote on the interim financing and that they would then use the bank who quoted the most favorable interest rate. The interest quote secured by Smith from Central Bank was higher than the 9¾% interest quote obtained by Peters from the Ouachita National Bank, and it was for this reason they agreed to secure the interim financing through the Ouachita National Bank.
The appellant was aware the interim financing was essential to the construction of the project and was aware that the loan had been consummated with Ouachita National Bank before he executed the letter agreement of April 30, 1979. He further testified that interim interest was a proper cost to be included in the total development cost. His sole reason here for contending that the interim interest should be eliminated from the total project cost is because of the provision in the articles of partnership requiring the written consent of the partners for any loan secured by the managing partner.
The appellant actively participated in the selection of the interim financeer and was aware the loan was necessary and that it was in fact made and some interest cost incurred before the letter agreement. This conduct and knowledge of appellant waived the requirement that he consent in writing to the interim loan.
The trial judge was correct when he included the cost of the interest on the interim financing as an item of total project cost.
WAS THE BLOOMINGFIELD REALTOR FEE PROPERLY INCLUDED IN THE TOTAL PROJECT COST
It is true that Mr. Bloomingfield performed no services in connection with the Handy City project. The evidence reveals that Handy City required the payment by the partnership of a fee to Bloom-ingfield of $25,000.00 and though the requirement was resisted by appellant and Ben Peters, Handy City continued to insist upon it. The dispute was resolved by Handy City agreeing to increase the annual rent from $106,000.00 to $108,000.00 in consideration of the partnership paying Bloom-ingfield $25,000.00. This transaction is analogous to Handy City requiring an additional 25 square feet of floor space and agreeing to pay additional rent for it. Under these circumstances cost of the additional floor space would be clearly included within the total cost of the project. Handy City’s requirement here was directly related to their occupancy of the building and the rent which they were going to pay for *876 this occupancy and it was in fact part of the project.
We further note that the appellant makes no complaint about the inclusion within the total cost of the project the cost of buying a lease held by a business known as Gabby's affecting the land on which Handy City desired their building to be constructed. The circumstances under which the Bloomingfield real estate commission was paid was no more unrelated to the total cost of the project than was the cost of buying Gabby’s lease.
We further observe that appellant testified it was commonplace for fees paid brokers who secured leases to be included within the total cost of developing a project. In effect, the $25,000.00 here paid was directly related to, if not the securing of Handy’s initial lease, at least to securing an amendment thereto increasing the rent. It is therefore analgous to a brokerage fee for securing a lease within the development.
We further note that the $25,000.00 was paid to Bloomingfield before the appellant executed his letter agreement of April 30, 1979. He actively participated in the negotiations which resulted in this payment. He testified that he determined the value of the project to be $900,000.00 which was an essential element of the formula contained in the letter agreement by which his selling price was to be determined. He testified he included the amount of the annual rent to be received from Handy as an element in his determination of the $900,000.00 value. The annual rent to be received from Handy had been increased from $106,000.00 to $108,000.00 as a result of the Bloomingfield transaction before Smith used the rent figure in connection with his value determination.
For all of the reasons discussed we conclude the trial judge properly included the $25,000.00 Bloomingfield fee within the total cost of the project.
PURPOSE OF SALES AGREEMENT SIGNED BY SMITH ON MARCH 19, 1980
The appellant contends in the alternative that the plaintiff has no right to claim a refund for overpayment based upon the audit reflecting that he received $50,-000.00 when he was only entitled to approximately $34,000.00 because the sale sent for his execution on Feb. 5, 1980 constituted a compromise settlement under the provisions of C.C. Art. 3071.[3]
The plaintiff contends this sale was not intended to supersede the April 30, 1979 letter but rather was designed solely to protect its first user status for tax purposes. Plaintiff points out that the sales document was contemplated by the provisions of the last paragraph of the letter agreement wherein appellant agreed to sign any document necessary for the preservation of the buyer’s first user status.
Ben Peters’ letter of transmittal of the document to Smith specifically pointed out that the purpose of the sale was to preserve the first user status for the plaintiff. Appellant acknowledged in his testimony that he was aware of this purpose, although he feared that it might also be used by the Peters brothers as a device to preclude giving him additional money in the event he was found entitled to it under the formula of the letter agreement.
We find that when the sales agreement is evaluated in light of the last paragraph of the letter agreement and the stated purpose for it contained in the letter wherein it was transmitted there is no basis for Smith’s belief that it had any legal significance beyond its use to preserve for the plaintiff the first user depreciation status which was sought to be protected.
We further note that no dispute existed as of the time the sales agreement was *877 signed by Smith on March 19, 1980 because the audit was not prepared until July 29, 1980. It was only following the transmission of the audit to Smith on August 1, 1980 and the request on this date for the refund of the overpayment that the dispute became clearly evident.
It is further significant that the sales document, which was lost by Smith’s attorney, had not been signed by John Peters and may not have been signed by Ben Peters.
We also observe that Smith instructed his attorney to retain possession of this document and his attorney refused to deliver it to Ben Peters. Smith was controlling the document until it was determined whether he was entitled to additional funds under the letter agreement formula and in the event he was, to prevent the possible use of the document to deny him the additional money. An evaluation of the testimony of Smith’s attorney establishes that Smith told him to retain possession of the sales agreement because Ben Peters owed him some money. Smith only signed the sale to comply with his obligation under the last paragraph of the letter agreement and he had no intention for the document to supersede the letter agreement and he took the necessary precaution to be certain that it could not be used for that purpose by retaining control of it. He cannot now attempt to assert that the sale signed by him on March 19,1980 was intended by the parties as a compromise and settlement of their respective rights which superseded the letter agreement.
This alternative assignment of error has no merit.
Judgment AFFIRMED at appellant’s cost.

. April 30, 1979
Jack L. Smith
P.O. Box 2421
Monroe, La. 71201
RE: Peters, Smith & Co., a Louisiana Partnership
Dear Jack:
This letter is to confirm our agreement wherein Johnny and I have agreed to buy your interest in the present partnership of Peters, Smith & Company. The consideration for the sale will be one-half of the difference between a sale price of $900,000.00 and the total project cost to be ascertained prior to Handy City taking occupancy of the building. Our most recent estimated cost of the project was $786,723.00 which, when divided by two, gives a consideration to you of approximately $56,638.00.
We agreed as further consideration, to disburse a substantial portion of the money or $50,000.00 to you upon our working out of the terms mentioned herein. Accordingly, enclosed please find our check for $32,000.00 which constitutes the sum of $50,000.00 minus two previous advances of $13,000.00 and $5,000.00 respectively.
A further consideration of this sale was for you to execute the necessary documents of any nature whatsoever in order to allow us to continue our first user status.
With kindest regards,
Yours very truly,
/Benjamin M. Peters, Individually
Benjamin M. Peters, Individually and as Agent and Attorney-In-Fact for John R. Peters, Jr.
Accepted, Monroe, Louisiana
April 30, 1979
/Jack L. Smith
Jack L. Smith
BMP:dc
Enclosure

. We glean from the record that the first user of an improvement has the right under internal revenue regulations to take the depreciation in the calculation of his income taxes.

. C.C. Art. 3071:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. ...